W. P. TORRANS v. THE STATE.

No. 8223.    Decided June 25, 1924.

Rehearing denied November 5, 1924.

1.—Assault to Murder—Jurors—Challenging After Acceptance—Cause Insufficient.

Where a juror has been accepted by appellant a motion to stand such juror aside on the ground that he was related to a witness for the state, upon the discovery of such fact, was properly overruled. That a juror is related to a witness in the case is not a statutory ground of challenge for cause, and unless injury is shown to appellant it is not error to permit such a juror to serve.

### 2.—Same—Evidence—Excluding after Admitted—Not Error.

A witness having testified to a fact, appellant objected to such testimony and his objection was sustained and the jury instructed not to consider it. The testimony excluded, being clearly admissible and the court being in error in excluding it, and instructing the jury to disregard it, appellant cannot be heard to complain of the harmful effect of such testimony on the mind of the jury.

### 3.—Same—Conduct of Court—Not Improper.

It is not improper for the court, during the progress of the trial to tell the attorney for either side, who has a witness seemingly unfamiliar with court procedure, or who might be voluntarily offering statements in evidence, that it would be proper for him to take the witness out and talk to him.

### 4.—Same—Evidence—Properly Admitted.

It was not improper for the court to permit the mother-in-law, of Mr. Rice to testify that appellant put her out of the room, the right of possession to such room being an issue in the case, without her consent, and that immediately after she went to the police station. Such testimony, under the facts in this case were material.

### 5.—Same—Bills of Exception—Improper Practice.

It is not proper practice for counsel to embrace in one bill of exceptions several facts admitted and others excluded. A bill of exception should present but one issue, and that clearly stated together with surroundings showing the grounds and reasons for admitting or excluding same. Each bill should be so drawn as to apprise this court of all facts to enable us to pass upon the merits of the bill without reference to statement of facts.

### 6.—Same—Evidence—Assailing Witness.

It is not proper on cross-examination to ask a witness for the state if she is not a common prostitute, and a bill of exception that does not set out what the answer of the witness would have been, or that she would not have claimed her privilege to refuse to answer such question, present no error.

### 7.—Same—Charge of Court—Assault to Murder—Properly Submitted.

The evidence in this case, even that of appellant himself, clearly raised, the issue of an assault to murder, and the court properly submitted the issue to the jury.

### 8.—Same—Argument of Counsel—Not Improper.

Appellant complains that the argument of counsel for the state to the effect that the defendant forced the old lady Brown out of the hotel by punching her in the breast with a gun, the court when the statement was made sustaining appellants objections to it, and instructing the jury not to considered such argument. No error.

### 9.—Same—Argument of Counsel—Very Improper.

A statement made by the county attorney in his argument that "Dogs and other animals of the lowest kind will respect their dead, but here is a

man lower than dogs and the vilest of creation who would not respect the dead," was highly improper, but we do not believe would warrant the reversal of the case, in the light of the evidence, and the fact that the jury inflicted the lowest punishment. Counsel for the State are again admonished not to indulge in such scurrilous expressions in their argument.

Appeal from the District Court of Eastland County. Tried below before the Hon. E. A. Hill, Judge.

Appeal from a conviction of an assault to murder; penalty, two years in the penitentiary.

*E. A. Bills,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—Appellant was convicted in the District Court of Eastland County of assault with intent to murder, and his punishment fixed at two years in the penitentiary.

A hotel building situated in the town of Ranger was the subject of a controversy between appellant and his wife on one side and the Rices on the other. The Rices seem to have been in possession of the property. On the day of the alleged assault they were all supposed by appellant to have gone to a funeral. As a matter of fact the mother-in-law of one of them had been left at said building. Appellant and his wife each armed with a pistol went to the building after consultation with an attorney and took possession of it. There is a controversy between them and the mother-in-law as to the manner and method of such taking. She testified that they presented a pistol at her and took it from her, but her evidence was excluded by the court. Appellant and his wife said that when they entered and took possession, she went away.

The mother-in-law of the Rices reported to the officers what had taken place as viewed by her from her standpoint, and said officers went to the premises in a car. They testified on this trial that appellant and his wife were sitting on the porch when they stopped their car at the curb, and that before they had time to acquaint said parties with their official character or the purpose of their visit, appellant and his wife began shooting at them from the porch. Appellant and his wife testified in substance that they expected trouble with the Rices and went to said premises prepared to defend their possession thus acquired by the use of their weapons. They said they had been told by an attorney they had a right to do so. They further testified that when the officers came up that appellant was upstairs in the building and that his wife was sitting on the porch, and that they were fired upon by the officers without preliminaries. She testified that she returned the fire.

Appellant said that when he heard the shooting from where he was, he thought the Rices had come back and opened fire upon them. Both appellant and his wife testified that they did not know any of the party of officers and that they supposed an attack had been made upon them by the Rices.

From what we have said it is plain that the theories respectively of the State and the defendant were wholly at variance, that of the State being an unprovoked assault by appellant and his wife upon the officers with pistols without waiting for any manifestation of hostility on the part of said officers, or any explanation from them as to the purpose of their stopping at the curb. The State attributed the beginning of the difficulty and the firing of the first shots entirely to appellant and his wife. Appellant and his wife asserted that everything they did was in self-defense against an unlawful attack begun wholly by the officers; and that in all they did they believed themselves to be defending against an attack on the part of the Rices.

The first bill of exceptions complains of the refusal of the trial court to stand aside a juror after he had been selected to try this case, upon discovery of the fact that he was related to a State witness, alleged in the bill to be a prejudicial witness. There is nothing in the bill to show any diligence on the part of appellant in discovering the relationship of said juror, and nothing showing in any way that the presence of said juror on the jury was hurtful to appellant. That one is related to a State witness, is not a statutory ground of challenge for cause, and in the attitude the bill presents itself to us we are not prepared to say that the learned trial judge erred in declining to stand the juror aside.

Bill of exceptions No. 2 sets out the testimony given by the mother-in-law of one of the Rices regarding the method and manner of the taking possession of said premises above referred to by appellant and his wife. She said that appellant pushed the door open and came in and put a gun right up that way (indicating toward her breast). The bill further reflects that an objection was made to this evidence and that the court excused said witness and instructed the jury not to consider her testimony, in language which is also set forth in the bill. It is then stated that the appellant excepted because the statements were immaterial, prejudicial, not a part of the *res gestae,* and for the further reason that the court could not cure the error of the testimony by instructing the jury not to consider same. We are not in accord with the view that this testimony was incompetent. Appellant made the basis of his and his wife's action in the premises, the proposition that they were in peaceable possession of property which they claimed as theirs. Said testimony appears to us to be in rebuttal of the proposition that they were in fact at any time in peaceable possession of the premises. We doubt seriously whether persons may take

forcible possession of property, ejecting others therefrom by the use of weapons, and then assert their right to defend said property by shooting other persons whom they supposed to be asserting a claim to the property adverse to themselves.

We would not think it improper for the court to tell the attorney for either side who had a witness seemingly unfamiliar with court procedure or who might be voluntarily offering statements in evidence, that it would be proper for him to take the witness out and talk to him. We do not see how this could leave the impression upon the jury that there had been another offense committed by the accused, in a criminal case, or how it could tend to intensify in the minds of the jury a prejudice claimed to have resulted from testimony already given by such witness. We think no error is presented by the bill complaining of this proceeding.

We do not think the court erred in permitting the mother-in-law of Mr. Rice to testify that on the day of the shooting appellant came to the premises and demanded of her possession of said premises and that he put her out of the room without her consent, and that immediately after he did so she went to the police station. We have expressed our view of such testimony in discussing Bill No. 2.

Bill of exceptions No. 5 complains at length of various matters, a part of which appear to have been testified to by appellant without objection. The testimony complained of purported to be what would have been said by appellants wife while on the witness stand. The matters set out in said bill are not such as the witness would have been permitted to give in testimony, such as the statement that she and her attorneys had gone fully into the record and facts touching the question of the ownership of the property where the shooting occurred, and that they knew said property was the property of herself and her husband and that in fact she legally owned said property. The only question seemingly raised by the evidence in behalf of appellant, was of the right of self-defense, and it could have been in nowise established by the testimony rejection of which is complained of in said bill. We observe that appellant testified to his belief of their ownership of the property in question, and the learned trial judge in qualifying the bill under discussion, says he offered to let the wife also testify.

Bill of exceptions No. 6 complains of the refusal of the court to permit the defense to ask a witness for the State on cross-examination if she was not a common prostitute. In view of the fact that the bill does not set out what the answer of the witness would have been, or that she would have waived her right to decline to answer the question reflecting upon her, and would have answered in the affirmative, said bill presents no error.

We perceive no reason for the court charging only upon the law

of aggravated assault, as requested in a motion filed by the appellant, and believe no error was committed in the refusal of said motion.

There is complaint of the refusal of the court to charge the jury that if appellant owned the building where the shooting occurred, or if he believed he owned the same, and that he had the legal title and possession of said property, or if he feared that other parties might make an attempt to seize and take said property, or if the jury believed from the evidence that appellant believed the officers were parties going to attempt to take said property, and that the defendant believed said parties were making an attempt to take said property, etc. Said charge is obnoxious to the principle land down in Sec. 1944 of Mr. Branch's Annotated P. C. where are collated a number of authorities sustaining the proposition that a charge on self-defense should not group a number of facts and require the jury to believe them all before they are authorized to acquit. Said charge is also open to the further objection that it is not sustained by the facts in the record. Appellant testified that he shot because of the attack that had been made upon his wife; and she testified that she shot because of the attack that had been made upon her. The testimony both for the State and the appellant is in accord upon the proposition that there was no investigation or statement or parley of any kind between the parties before the shooting began. If the testimony for the State is looked to to determine the issues,—the shooting began at once upon the officers' arrival and without any statement by either party. If the testimony of the appellant is looked to for the same proposition, it shows that the officers began shooting without investigation as soon as they drove up. In the latter event appellant and his wife would be accorded their absolute right of self-defense. In the former,—they would have no right of self-defense, either based on the proposition of defense of person or property.

For the reasons just stated in discussing bill of exceptions No. 8 we would be constrained to hold the charge of the court below not defective because of its failure to include a charge on the defense of property rights, this matter being complained of in appellant's bill of exceptions No. 9.

It is made to appear in bill No. 10 that the State's attorney said to the jury that the defendant forced the old lady Brown out of the hotel by punching a gun in her breast, the lady referred to being the mother-in-law of one of the Rices. When objection was made to this statement the learned trial judge instructed the jury not to consider said remarks, notwithstanding which by this bill of exceptions it is insisted that the matter was so harmful as that it could not be remedied by such instruction. We do not consider the matter of the gravity attached to it by appellant. The occurrence referred to was part of the act of appellant in taking possession of the place and led up to the

shooting. It is in testimony by Mrs. Brown that appellant came to the premises where she was and demanded possession and put her out of those rooms without her consent, and that she went with her complaint to the police station. She also testified that appellant put a gun up to her breast when he demanded possession. This latter was excluded by the court, but in our opinion was not subject to the objection made. We do not think reversible error committed by the argument complained of.

Another bill complains of a statement by the county attorney as follows:

"Dogs and other animals of the lowest kind will respect their dead, but here is a man who is lower than dogs and the vilest of creation who would not respect the dead."

It is very much to be regretted that language of this kind would be indulged in by an attorney arguing a case in a court of justice. It has no pertinence to any issue and but reflects an advantage taken of his position as counsel in the court room to use abusive language toward one charged with crime. Such conduct is inexcusable and deserved to be severely reprimanded by the trial court. However, when viewed from the standpoint of its probable effect upon the jury and its relation to the issues involved in this case, we observe that it seems to relate to no issue and to no testimony and to be but relegated to any realm of abusive language unsupported by testimony and unrelated to any issue. We cannot think that an intelligent jury would have their passions inflamed or their prejudices aroused or their sympathies appealed to, or their judgment warped by such statements. So believing, it appears to us that to reverse the case for said statement would be an infliction of injury upon the State, and the incurring of the expense of another trial because of a matter which while wrong and inexcusable, would seem not capable of injurious effect.

The statement complained of in bill of exceptions No. 12 to the effect that "This defendant was at that hotel that day ready to shoot anybody who came there," would seem to some extent to be warranted by the action of the appellant as reflected by the State's testimony. Nor do we believe the criticism of the argument reflected in bill of exceptions No. 13 to be well taken. If the Rices had driven up in a car after the funeral, and appellant and his wife had opened fire upon them without a word or movement, as appears from the State's testimony to have been the manner of their assault upon the officers, they would have been as guilty of an assault as if they had shot in the same manner and under the same circumstances at the officers.

We have carefully considered each of the complaints made, as well as the facts in evidence and do not believe the record to show any error for which this judgment should be reversed, and an affirmance will be ordered.

*Affirmed.*

MORROW, PRESIDING JUDGE.—Genett, accompanied by Hargraves, went to the scene of the assault for the purpose of arresting the appellant. A warrant authorizing the arrest was possessed by Genett. On their arrival the shooting took place, the evidence as to the beginning of which was in conflict. Genett was acting chief of police.

According to the testimony of Mrs. Ida Brown, the mother-in-law of A. C. Rice, she was in the property known as the Travis Rooms while Rice and his wife, who lived there, had gone to a funeral. Appellant came to the rooms and put the witness out without her consent. She went to the police station.

Appellant testified that he built the Travis Rooms in 1919, and that at the time of the alleged offense he claimed to have owned them and believed that he was the owner. He had been told by the county attorney that if he got peaceable possession of the property, he would be within his rights to kill anybody who sought to take it away from him, and that acting upon this information, he and his wife went to the premises, each armed with a pistol. Quoting him, he said:

"The Rices were gone to the funeral on one of the Dice brothers. An old lady had charge of that property when I went down there. As to whether I threw her out of there—she went out herself. She said, 'wait until I unlock the door and I'll come out.' That is what she said."

"We thought they were all at the funeral. * * * We went down there and the house was all locked up, and we went to the front door and shook it, and this old lady came to the front door and she said, 'Wait until I unlock the door and I'll get out.' "

A. C. Rice testified that he was attending the funeral of his brother at the time of the shooting.

The Statute, Art. 1110, P. C., touching the law excusing a homicide when committed in the protection of property, reads thus:

"When, under article 1107, a homicide is committed in the protection of property, it must be done under the following circumstances:

1. The possession must be of corporeal property, and not of a mere right, and the possession must be actual and not merely constructive.

2. The possession must be legal, though the right of the property may not be in the possessor.

3. If possession be once lost, it is not lawful to regain it by such means as result in homicide.

98 T. C.—20.

4. Every other effort in his power must have been made by the possessor to repel the aggression before he will be justified in killing."

We understand from the record, as revealed by the testimony of the appellant, that he claimed ownership of the property and believed himself to be the owner thereof. He knew the fact that the Rices were occupying the premises! that they had gone to a funeral; that they had locked the doors. It was his intent to take forcible possession of the property in the absence of the Rices. According to the testimony of Mrs. Brown, he did forcibly dispossess her. She testified also that this was done at the point of a pistol. That phase of her testimony the court improperly instructed the jury to disregard. It is upon these facts that the statute operates, and upon the application of the statute that the appellant's right, if any, to defend his possession of the property by attempting to commit the homicide must be tested. We confess that we are unable to conclude that there is evidence upon which the jury might have determined that at the time the shots were fired the appellant was the rightful possessor of the property. If his ownership be conceded, the possession was lost and his re-entry was unlawful.

Appellant refers to the Ledbetter case, 9 S. W. Rep., 60, as furnishing the precedent condemning the action of the court in refusing to charge an aggravated assault. In the present case, the court accorded the appellant the full right of self-defense. The only defensive theory presented by the appellant is that he was attacked in a manner which endangered his life. In Ledbetter's case it is said, in substance, that if the attack upon the property is such as to produce in the mind of the owner a reasonable apprehension of fear of death or serious bodily harm, the owner may act at once, without resorting to other means to protect his property, but if the owner of the property is attacked, not in such manner as to endanger life, every effort must be made to repel the aggression in order to justify the homicide. It is further said:

"But suppose, as is very clearly indicated in this record, it was the purpose of Rice to take the plow and oxen from the accused,—evidently this would have been unlawful,—and the attempt to seize the property aroused the passions of the accused to such an extent as to render the mind incapable of cool reflection, to such an extent as to rebut the presumption of malice, the killing would be manslaughter only, though the defendant did not resort to all other means to prevent the seizure of the ozen."

The plow and oxen were in peaceable possession of the accused and Rice sought to dispossess him thereof. In the present case, appellant's possession was neither peaceable nor lawful.

According to the theory of the appellant, the only attack made was the one endangering his life or serious bodily harm. Against this he directed resistance and was accorded by the court the unqualified right of self-defense. According to the State's theory, there was no attack made by the injured party, but he was fired upon immediately upon his arrival. He indicated no purpose to take the property but it was his purpose to execute the warrant of arrest which he had in his possession. We are constrained to adhere to our former ruling denying the existence of evidence requiring an instruction to the jury upon the law of aggravated assault.

We also entertain the opinion, as stated on the original hearing, that the facts in evidence negative the condition warranting a homicide in the defense of property. The motion for rehearing is overruled.

*Overruled.*